UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMEO LUMBO and ERLINDA LUMBO,<br><br>                                    Plaintiffs,<br><br>v.<br><br>LIBERTY CREDIT ACCEPTANCE INC., and TDARC ASSET RECOVERY,<br>                                    Defendants. | Case No.:  17-cv-1814-AJB-JLB<br><br>**ORDER DENYING DEFENDANT LIBERTY CREDIT ACCEPTANCE, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE; OR IN THE ALTERNATIVE, TRANSFER**<br>**(Doc. No. 3)** |

Before the Court is Defendant Liberty Credit Acceptance, Inc.'s (Liberty) motion to dismiss, or in the alternative, transfer. (Doc. No. 3.) Because the Court finds jurisdiction in this venue is appropriate, the Court **DENIES** Liberty's motion.

## I.     FACTUAL BACKGROUND

Defendants challenge whether plaintiffs Romeo and Erlinda Lumbo have sufficiently demonstrated that a "substantial part" of their Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") claim arose in this judicial district for the purpose of establishing venue. Plaintiffs reside in San Diego, California, (Doc. No. 6 at 4), and Liberty's principal place of business is in Wilmington, County of Los Angeles, California, (Doc. No. 3-1 at 2). Plaintiffs financed a vehicle in Los Angeles County from Pacific Motors dealership, whom is not a party to this action. (Docs. No. 3-1 at 2, 6 at 4.) Pacific Motors then assigned the loan to Liberty. (*Id.*) Liberty began collecting on the vehicle loan through letters and a telephone call (Docs. No. 6 at 4, 1 ¶ 42.) Additionally, Defendants

1

1  Liberty and TDARC physically repossessed the vehicle from Plaintiffs' San Diego
2  residence. (Docs. No. 6 at 4, 1 ¶ 37.)

3     Plaintiffs commenced this action in the Southern District of California (SDCA)
4  alleging Liberty violated the Rosenthal Act by engaging in unfair practices of debt
5  collection. (Doc. No. 1.) Separate and apart from this action, Plaintiffs filed a complaint in
6  the Los Angeles Superior Court against Pacific Motors, alleging overcharges of licensing
7  fees in violation of California Vehicle Code § 11616. (Doc. No. 6 at 4.)

8                              **II.    LEGAL STANDARD**

9     Title 28 of the United States Code § 1391 is the general statute governing actions
10  brought in district court to determine the propriety of venue. Section 1391(b) establishes
11  that venue is proper in the following instances:

12     (1) a judicial district in which any defendant resides, if all defendants are
13         residents of the State in which the district is located;
14     (2) a judicial district in which a substantial part of the events or omissions
            giving rise to the claim occurred, or a substantial part of property that is
15         the subject of the action is situated; or
16     (3) any judicial district in which any action may otherwise be brought as
            provided in this section, any judicial district in which any defendant is
17         subject to the court's personal jurisdiction with respect to such action.

18  28 U.S.C. § 1391(b)(1)–(3). Thus, venue is generally proper either where the defendants
19  reside or where a substantial part of the events giving rise to the claim occurred. 28 U.S.C.
20  § 1391(b)(1)–(2). Section 1391(b) is disjunctive, accordingly, the analysis of venue under
21  the first subsection is of no consequence to the other subsections. *See Sapan v. Dynamic*
22  *Network Factory, Inc.*, No. 13-CV-1966-MMA(WVG), 2013 U.S. Dist. LEXIS 192266, at
23  *5 (S.D. Cal. Nov. 22, 2013).

24     In considering a motion to dismiss under Rule 12(b)(3), the "pleadings need not be
25  accepted as true, and facts outside the pleadings may be considered." *Doe 1 v. AOL LLC*,
26  552 F.3d 1077, 1081 (9th Cir. 2009); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324
27  (9th Cir. 1996). The plaintiff bears the burden of proving the propriety of venue in the
28

chosen judicial district. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

## III.  DISCUSSION

### A. Venue in the Southern District of California

Liberty argues that Plaintiffs failed to establish that Liberty had the required minimum contacts with the SDCA. (Doc. No. 3-1 at 10.) Whether the Court analyzes venue through minimum contacts or whether a "substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2), the Court comes to the same conclusion: venue is proper in the SDCA.

Liberty is correct in addressing that venue may be proper in the Central District of California (CDCA), (Doc. No. 3-1 at 10), however, venue may be proper in multiple districts. *Hastings v. Hastings*, No. 15-CV-1578-H-KSC, 2015 WL 12672700, at *4 (S.D. Cal. Sept. 18, 2015) (finding venue proper in the Southern District of California because the plaintiff lived there and suffered his injuries there, even though the case may have also been filed in Florida because the defendant acted in Florida); s*ee also Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (courts are not required to determine the best venue).

Because Cal. Civ. Code § 1788.17 incorporates the Federal Fair Debt Collection Practices Act (FDCPA), violations of the FDCPA are also violations of the Rosenthal Act. The FDCPA prohibits debtors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse" any debtor in the collection of a debt, including several forms of abusive debt collection practices that involve the use of telephone calls. *See, e.g.*, 15 U.S.C. § 1692d(5), (6). For the purposes of determining venue, FDCPA cases have held that a claim may be brought in "the district in which the plaintiff received the offending communication or debt collection letter." *Maloon v. Schwarts, Zweban & Slingbaum, LLP*, 339 F. Supp. 2d 1108, 1114 (D. Haw. 2005) (referencing *Bates*, 980 F.2d 865; *Paradise v. Robinson & Hoover*, 883 F. Supp. 521 (D. Nev. May 4, 1995) (venue was proper where plaintiff received debt collection letter)).

3

According to Plaintiffs' complaint, Liberty sent Plaintiffs an erroneous collection notice, Defendants repossessed Plaintiffs' vehicle, and Liberty called Plaintiffs' cellular telephone to collect a debt, all of which occurred at Plaintiffs' San Diego Residence. (Doc. No. 1 ¶¶ 31, 37, 42.) This conduct meets the *Maloon* rule allowing venue in the district where Plaintiffs received offending communications. Moreover, the Court finds Liberty satisfies the minimum contacts requirement of personal jurisdiction because Liberty made multiple attempts within this district, including physically entering the district, to satisfy Plaintiffs' purported debts. (*Id.*) Thus, the Court finds Defendants purposely availed themselves of this forum and that the exercise of personal jurisdiction here is proper. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

### B. Transfer for Convenience

The Court notes that, contrary to Liberty's argument, (Doc. No. 3-1 at 12–13), transfer under 28 U.S.C. § 1406(a) is applicable only when an action is improperly filed in the wrong venue. As previously held, SDCA is not an improper venue, rendering a § 1406 transfer analysis inapposite.

A district court may order transfer "[f]or the convenience of parties and witnesses" and "in the interest of justice," so long as the action could have been filed in the transferee district in the first instance. 28 U.S.C. § 1404(a). First, Liberty maintains this action could have been filed in the CDCA because "both Defendants are citizens of the state of California, and the Central District of California." (Doc. No. 3-1 at 13).

Second, Liberty insists that transfer promotes the interest of justice and the convenience of the parties and witness. (*Id.* at 13.) The Court typically weighs the following factors: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of

4

unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

Most of the factors indicate that a transfer to CDCA would be unnecessary. First, while Plaintiffs' contract with Pacific Motors was executed in South Gate, California,[1] (Doc. No. 3-1 at 10), it is the subsequent communications in San Diego, and not the underlying contract, that gives rise to Plaintiffs' Rosenthal Act claim, (Doc. No. 1). Second, both district courts sit in California and are equally familiar with the governing law. Third, Plaintiffs chose the SDCA. Courts typically give plaintiffs' choice considerable weight. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Fourth, as previously described, Liberty has sufficient minimum contacts with the SDCA to justify the exercise of personal jurisdiction and Plaintiffs reside in San Diego. Fifth, those very contacts are the events underlying Plaintiffs' claim, (Doc. No. 6 at 6.)

Factors six through eight are neutral. Neither party shows how costs of litigation in either district would be changed. Both parties have pertinent witnesses and sources of proof in their districts, stemming from the loan agreement to the repossession of the vehicle. Either forum is equally able to compel the attendance of unwilling non-party witnesses. The factors weigh against a transfer to CDCA because the Plaintiffs chose this forum, Liberty has contacts with this forum that make up Plaintiffs' underlying claim, and the ease of litigation would not be burdened by continuing proceedings in this district.

## C. Consolidation of Claims

The feasibility of consolidation of claims is also pertinent to the Court's determination whether to allow a transfer of venue. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). *Compare Owner-Operator Indep. Drivers Ass'n v. C.R. Eng., Inc.*, No. CV F 02-5664 AWI(SMS), 2002 U.S. Dist. LEXIS 28764, at

---

[1] The CDCA encompasses Los Angeles County, which includes South Gate. UNITED STATES DEPARTMENT OF JUSTICE, https://www.justice.gov/usao/district/cdca; COUNTY OF LOS ANGELES, http://ceo.lacounty.gov/forms/09-10%20cities%20alpha.pdf.

5

*29–*30 (E.D. Cal. Aug. 19, 2002) (finding consolidation of claims was a minor factor weighing toward the transfer of venue), *with A. J. Industries, Inc. v. U.S. Dist. Court of California*, 503 F.2d 384, 389 (9th Cir. 1974) ("The feasibility of consolidation is a significant factor in a transfer decision.").

Under Federal Rule of Civil Procedure 42, courts may consolidate actions if they involve a "common question of law or fact." Despite Liberty's contentions, (Doc. No. 3-1 at 14–15), the Court does not find a relation between the Pacific Motors class action suit and the present action. The parties are different and the issues of law involved in the violations of the California Vehicle Code are entirely distinct from those involved in Fair Debt Practices. (*See* Doc. No. 6 at 10.) Additionally, court resources will not be preserved during discovery if the claims are consolidated because the evidence in support of the present claims revolve around Liberty's individual conduct towards the Plaintiffs as opposed to the systematic practices of Pacific Motors' vehicle licensing. Because the actions are not similar, the Court does not find a transfer based on consolidation principles appropriate.

## IV.   CONCLUSION

For the reasons set forth above, Liberty Credit Acceptance, Inc.'s motion to dismiss or in the alternative, transfer, (Doc. No. 3), is **DENIED**.

**IT IS SO ORDERED**.

Dated:  November 22, 2017

Hon. Anthony J. Battaglia
United States District Judge

6